509 So.2d 273 (1987)
Raul Garcia GRANADOS QUINONES, Petitioner,
v.
SWISS BANK CORPORATION (Overseas), S.A., Etc., Respondent.
Jorge Raul GARCIA GRANADOS, Petitioner,
v.
SWISS BANK CORPORATION (OVERSEAS), S.A., Etc., Respondent.
Carmen RODRIGUEZ CERNA, Petitioner,
v.
SWISS BANK CORPORATION (OVERSEAS), S.A., Etc., Respondent.
ESTUDIOS, PROYECTOS, E INVERSIONES DE CENTRO AMERICA, S.A. (EPICA), Petitioner,
v.
SWISS BANK CORPORATION (OVERSEAS), S.A., et al., Respondents.
Nos. 69413, 69412, 69478 and 69479.
Supreme Court of Florida.
May 28, 1987.
Rehearing Denied July 29, 1987.
Thomas H. Seymour and Thomas D. Hall of Kenny, Nachwalter & Seymour, P.A., Miami, for Raul Garcia Granados Quinones.
L. Van Stillman, Fort Lauderdale, for Jorge Raul Garcia Granados.
Michael F. Kelly, Miami, for Carmen Rodriguez Cerna.
George Volsky, Miami, for EPICA.
William L. Richey and Beth F. Jacobi of Richey & Munroe, P.A., Miami, for respondents.
BARKETT, Justice.
We accepted jurisdiction because the opinion of the court below, Quinones v. Swiss Bank Corp. (Overseas) S.A., 498 So.2d 440 (Fla. 3d DCA 1986), cites as controlling authority a decision previously reversed by this Court, Manrique v. Fabbri, 474 So.2d 844 (Fla. 3d DCA 1985), quashed, 493 So.2d 437 (Fla. 1986). Art. V, § 3(b)(3), Fla. Const.
After reviewing the record in this case we find that the decision of the district court is not inconsistent with our opinion in Manrique and approve the result reached by the court below.
Petitioner Raul Garcia Granados Quinones ("Granados") and a number of entities and persons allegedly affiliated with him petition for review of the Third District's *274 affirmance of an order denying a motion to dismiss this action for lack of venue. The issue presented is whether the contract of the parties reflects an enforceable choice-of-forum clause.
For the limited purpose of resolving this question, we must treat all factual allegations in the respondent's second amended complaint as true. Scavella v. School Bd. of Dade County, 363 So.2d 1095 (Fla. 1978). These allegations as framed by the respondent Swiss Bank Corporation (Overseas) S.A. ("Swiss Bank"), a Panamanian banking institution, reveal that Granados is a prominent member of the family that governed Guatemala until deposed by coup d'etat in 1982. Although Granados remains a citizen of Guatemala, he has maintained residences and other property in Florida since fleeing his homeland. In 1978 while still in power in Guatemala, Granados and his affiliates opened a $20 million line of credit with Banque Nationale de Paris ("Paris Bank"). From time to time this initial credit line was extended in increments of several million dollars each. In its second amended complaint filed in early 1986, Swiss Bank alleged that the total debt exceeded $45 million.[*]
Swiss Bank further alleges that Granados and his affiliates have engaged in a pattern of fraudulent activity. Specifically, Swiss Bank contends that Granados systematically used his influence in Guatemala to defeat repayment, and since his family's ouster has fraudulently transferred and concealed assets in Florida and elsewhere. Moreover, Swiss Bank argues that Granados and his affiliates have engaged in activities proscribed by the Florida RICO Act. See §§ 895.01 to 895.09, Fla. Stat. (1985).
When sued on these charges in Dade County, Granados filed a motion to dismiss based upon the translation of a clause in the original loan agreement with Paris Bank. Clause 17 was drafted and inserted into the agreement by Granados, and says in pertinent part:
In any of the cases wherein the contract may be terminated or at the end of the term, the Creditor [Paris Bank] may choose to take legal proceedings to the competent Courts of the City of Guatemala, Department of Guatemala, Republic of Guatemala, or to the competent Courts of Panama City, Republic of Panama. If legal proceedings are entered in the City of Guatemala, the legal action shall be carried out as established by the Codigo Procesal Civil y Mercantil of Guatemala.
Granados argues that our decision in Manrique compels the Dade County Circuit Court to recognize that proper venue lies only in the courts of Guatemala or Panama pursuant to the terms of the loan agreement. Swiss Bank contends the choice-of-forum clause is clearly permissive and therefore does not require that disputes be brought only in the courts of Panama and Guatemala.
Initially, although Granados argues that we drew no distinctions in Manrique between mandatory and permissive clauses, the decision clearly applies only to mandatory clauses. In both Manrique and The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), upon which it relied, the clauses in question provided for a mandatory and exclusive place for future litigation. We agree with the Second District when it recognized
a distinction between, on the one hand, so-called "mandatory jurisdiction" clauses in contracts which require that a particular forum be the exclusive jurisdiction for litigation concerning the contract .. . and, on the other hand, so-called "permissive jurisdiction" clauses which only provide that there may be jurisdiction over such litigation in a particular forum... .
Datamatic Services Corp. v. Bescos, 484 So.2d 1351, 1354 (Fla. 2d DCA 1986). Permissive clauses constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction *275 or venue in any other forum. See Citro Florida, Inc., v. Citrovale, S.A., 760 F.2d 1231, 1232 (11th Cir.1985); Keaty v. Freeport Indonesia, Inc., 503 F.2d 955, 956-57 (5th Cir.1974). This viewpoint has been accepted by a substantial number of jurisdictions. See Gruson, Forum-Selection Clauses in International and Interstate Commercial Agreements, 1982 U.Ill. L.Rev. 133, 134-36 n. 3 (citing prior cases). We thus hold that the trial court may properly exercise its discretion by refusing to enforce a choice-of-forum clause found to be permissive and not mandatory.
Thus, the central issue to be resolved is whether the trial court erred in finding clause 17 to be permissive and not mandatory. We note at the outset that Granados' burden on appeal is to show that the trial court's ruling on this matter was clearly erroneous. See Zapata Marine Service v. O/Y Finnlines, Ltd., 571 F.2d 208, 209 (5th Cir.1978). Moreover, we agree with the Fifth Circuit Court of Appeals that,
when a contract [choice-of-forum] provision is subject to opposing, yet reasonable interpretation [sic], an interpretation is preferred which operates more strongly against the party from whom the words proceeded.
Id. Accordingly, even if the trial court found "opposing reasonable interpretations," we cannot say that it erred in interpreting the clause against its author, Granados.
We do not find, however, that the record reflects any ambiguity in the language of clause 17. Granados has never contested the accuracy of the translation, conceding that it correctly uses the word "may" and not "shall." Rather, he presents the affidavit of two Guatemalan notaries containing conclusory statements that the parties "agreed in clause Seventeen ... that any action by any party to the 1980 agreement can only be brought in one of two jurisdictions, i.e. Guatemala or Panama." The affidavit avers that, once made, "[s]uch a choice is valid, enforceable and mandatory under the Laws of Guatemala." Thus, Granados argues, venue does not properly exist in the Florida circuit court.
This argument misses the mark. The court must begin its analysis by establishing whether the meaning of the agreement can be factually determined from the intent of the parties, the usage of language in the contract as a whole, or other pertinent facts. Words contained in the agreement should be given "a natural meaning or the meaning most commonly understood in relation to the subject matter and the circumstances." Sheldon v. Tiernan, 147 So.2d 167, 169 (Fla. 2d DCA 1962). Neither Granados nor the Guatemalan notaries have alleged or established that words used in clause 17 have extraordinary meanings under the law of Guatemala. Instead, Granados rests his case on bare assertions that the parties themselves intended the clause to be mandatory, which Swiss Bank and the other appellees deny. Moreover, Granados has not explained why clause 17 used the permissive word "may" when mandatory language such as "shall" and "may only" is used at least forty-four times in seventeen different clauses throughout the agreement. In a case similar to the one at bar, McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341 (8th Cir.1985), cert. denied, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985), the question as to whether or not a forum selection clause was mandatory or permissive hinged upon the meaning of the word "should." After examining the isolated definitions of that word, the court looked to the meaning of the term within the context of the actual contract and stated,
[t]hat the parties intended "should" to be differentiated from "shall" is also suggested by the use of the word "shall" to describe the rights and duties of the parties in eighteen other clauses of the [agreement].
Id. at 347. As in McDonnell Douglas, the contract before us evinces a clear differentiation between the words "shall" and "may," which Granados has not explained. In the absence of proof that the word "may" as used in clause 17 has some special meaning under Guatemalan law, we *276 thus must find that the trial court's ruling was not clearly erroneous.
We approve the decision below affirming the denial of the motion to dismiss.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[*] Although Paris Bank holds the original note, Swiss Bank supplied 32% of the total loan amount pursuant to an international pooling agreement among a number of banks and holds a letter of assignment from Paris Bank.